In the Matter of the Probate of the Last Will and Testament of CHARLES H. WELLS, Deceased.

MARY E. TERRY and Others, Appellants; CATHERINE Y. HALLO-WELL, Respondent.

Second Department, June 12, 1936.

*Barent L. Visscher* [*E. J. Dimock*, *Ruth A. Gladde* and *Glen W. Watkins* with him on the brief], for the appellants Mary E. Terry, Frederic H. Young, Charles W. Young, Fairfield Trust Company, as general guardian of Ethel Edwards, Ray D. Edwards, as general guardian of Robert Y. Edwards, and Ray Douglass Edwards, Jr.

*Syrena H. Stackpole*, for the appellants The Suffolk County National Bank and Mary E. Terry, as administrators, etc., of Charles H. Wells, deceased.

*Fullerton Wells*, special guardian for Robert Y. Edwards, appellant.

*John R. Vunk* [*Nathan O. Petty* and *George H. Carleton* with him on the brief], for the respondent.

HAGARTY, J. On the 6th day of January, 1934, Charles H. Wells, at the age of seventy-six years, died a resident of Baiting Hollow, Suffolk county, leaving an estate approximately of the value of $64,000. He was a bachelor and is survived by children and descendants of his deceased sister, Charlotte Wells Young, all of whom are appellants here with the exception of the respondent, Catherine Y. Hallowell.

In the absence of a will, letters of administration were granted to appellants The Suffolk County National Bank and Mary E. Terry, daughter of Mrs. Young and sister of Mrs. Hallowell, on the 26th day of February, 1934, the respondent here having renounced her right to such letters.

Seven months after the decedent's death, and on the 7th day of August, 1934, the clerk of the Surrogate's Court of Suffolk county received an anonymous communication addressed to the surrogate of that county, announcing the existence of a will made by decedent at the home of a " Miss Harriet Reeves " and expressing the intention of the writer to forward the will by mail. Two days thereafter, and on the 9th day of August, 1934, the clerk received by mail the paper that has been admitted to probate. The question here involves the genuineness of the document so received as the last will and testament of the deceased, Charles H. Wells. The respondent is the proponent, but she disclaims any personal knowledge of the prior history of the paper.

The envelope inclosing the document in dispute appears to have been improvised from ordinary wrapping paper or a paper bag and is postmarked, New York city, August eighth. Within that envelope there was a sheet of ruled foolscap, folded so as to form a wrapper, and bearing upon it the words, ostensibly in the decedent's handwriting, " To be opened at my death and sent to the Surrogate at Riverhead, Suffolk Co. Long Island. C. H. Wells." Inside that wrapper there was a stamped, but uncanceled, government envelope addressed " Surrogate of Suffolk Co., Riverhead, Long Island." The foolscap wrapper and that envelope were both sealed with wax and, in addition, the stamped envelope was sealed by use of the ordinary mucilage on the flap. Inside the government envelope was the alleged will, purportedly written by decedent and bearing date the 4th day of April, 1905.

This purported will is written on the same ruled foolscap paper as that which had been fashioned into the outer wrapping. The appearance of the foolscap wrapper was designed to give the impression that it was so made at the time of the making of the will in 1905, but the stamped envelope is watermarked " 1925," and the undisputed expert testimony is that the envelope was not issued prior to the 1st day of January, 1925. The watermark is now plainly discernible, because the envelope was slit with permission of the surrogate. On the assumption that the document was prepared by the decedent, it was necessary for him to have kept for twenty years or more a sheet of the same foolscap paper as that upon which he had made his will. The creases of the outer foolscap wrapper show that it was folded for the first time and for the express purpose of wrapping the stamped envelope.

The practical result of admitting this paper to probate is that, whereas under the laws governing intestacy the respondent and her brothers and sister would receive approximately $13,000 each,

and the three children of the deceased sister Charlotte would divide such a share, under this alleged will the respondent's sister and brothers would receive $500 each, the children of the deceased sister would receive nothing, while the respondent would receive approximately the sum of $62,500.

The purported witnesses to this alleged will were Harriet Reeves, Lozelle Young and Samuel L'Hommedieu, all of whom are now dead. Despite the fact that respondent alleged in her brief that the decedent and these witnesses were friends of long standing, we can find no proof sustaining that assertion other than documents which we believe to be forgeries. In the case of the alleged witness Harriet Reeves, the testimony of all of her relatives who testified, substantiated by all of her concededly genuine signatures introduced, was that she had never used an " s " at the end of her name. In other words, her name was " Reeve " and not " Reeves," as it appears in the will. It is spelled the latter way in the anonymous letter, however, and both the respondent and her husband claim to have found a souvenir book addressed " to Charles H. Wells from Harriet Reeves, Christmas 1906 " and a birthday card to Wells signed " from Harriet Reeves." These exhibits and another, which enters only incidentally because there is the one word " Harriet " on it, were forgeries in the opinion of the two handwriting experts, Albert S. Osborn and Scott E. Leslie, and we are of the same opinion. In our opinion, the introduction of these exhibits was a willful attempt to establish that at times Miss Reeve did use an " s " at the end of her name and also to show that she and the decedent were friends.

The alleged will, furthermore, sets forth the address of Miss Reeve as 179 West One Hundred and Thirty-seventh street, New York city. The appellants showed that she never lived there, and that at the time of the alleged making of the will she resided at 219 West Eightieth street, New York city. To meet this fault in her case and for the purpose of establishing consistency, the respondent introduced proof in the form of an interpolation upon a postcard from decedent to his sister. The postmark is smudged, so as to obscure the year date, and in the space for correspondence, over an undoubtedly genuine message, viz.: " Tell Fred I can use the blankets, but not to hurry about them. C. H. Wells," appears the following at a different angle of writing and in different ink: " Harriet left 137 W. soon after we were there that April and went to W. 80, but she is now at 220 W. 106 or 107 I not sure." Examination of this writing satisfies us that the opinion of the handwriting experts that it was not written by the decedent is correct. Despite hte fact that the stamp on this postcard had been removed, the

appellants were able to show by the postmaster at Calverton, from which office the card was postmarked, that the rubber cancellation stamp thereon was first obtained in 1912 and also that in that year the Baiting Hollow postoffice was abandoned. If this card was written in 1912, or thereafter, and referred to a visit which took place in 1905, the decedent undoubtedly would at least have set forth the year. In any event, it is most improbable that he referred to a visit that had been made seven years previously.

The anonymous letter written to the clerk of the Surrogate's Court, announcing the existence of a will, is written on letter paper and inclosed in an envelope that appears to be identical with a letter and envelope concededly used by the respondent five months prior to that time. A paper expert testified to that identity. The respondent admittedly employed two different kinds of handwriting, one of which, as evidenced by another letter concededly written by her, bears a close resemblance to the writing of the anonymous letter and envelope. Although the respondent denied writing the anonymous letter, two handwriting experts were of the opinion that she did.

We are referred by the respondent to three letters written by decedent as evidence that he regarded her with preferential affection. An examination of them confirms the opinion of the handwriting experts that they contain forged interpolations. The first interpolation appears in a letter dated the 22d day of May, 1928, at the bottom of the first page and at the top of the second page and reads: " Ency may try to get what I leave to you. You can have all when I'm thru." The second appears at the top of the second page of a letter dated the 24th day of November, 1928, and reads: " I want you to have what I leave." The third appears at the bottom of the first page of a letter dated the 4th day of March, 1929, and reads: " You are the only one I ever hear from." All of these interpolations occur either at the extreme bottom or extreme top of the page on which they are written and contain expressions which are not connected with the context, are in different inks and, in our opinion, in a different handwriting.

We have carefully considered the proof with respect to the genuineness of the writing of the will and the signatures thereon, inclusive of the specimen signatures which have been introduced, and have examined and analyzed them in the light of the differences pointed out by the expert witnesses and have come to the conclusion that the paper in its entirety is an obvious forgery.

In accordance with section 309 of the Surrogate's Court Act, we are, therefore, of opinion that the decree admitting the paper to probate as the last will and testament of the decedent should be reversed and probate denied on the facts.

The decree should be reversed on the facts and probate denied, with costs to appellants, payable by the respondent personally, with an allowance of $1,500 to the special guardian payable out of the estate, and without costs to the respondent or allowances to her or her attorney.

LAZANSKY, P. J., CARSWELL, JOHNSTON and ADEL, JJ., concur.

Decree of the Surrogate's Court of Suffolk county reversed on the facts and probate denied, with costs to appellants, payable by the respondent personally, with an allowance of $1,500 to the special guardian, payable out of the estate, and without costs to the respondent or allowances to her or her attorney.